IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOWARD B. WRIGHT, )
 ) Civil Action No. 2: 14-cv-0225
 Petitioner, )
 )
v. )
 )  United States Magistrate Judge
PENNSYLVANIA BOARD OF ) Cynthia Reed Eddy
PROBATION AND PAROLE, et al., )
 )
 Respondents. )

# MEMORANDUM OPINION AND ORDER[1]

Before the Court is a petition for a writ of habeas corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2254 by state prisoner Howard B. Wright. Petitioner's sole claim appears to be that he should be incarcerated in York County prison, as opposed to a Pennsylvania State correctional institution. For the reasons that follow, the petition will be dismissed.

## Relevant Background

Petitioner previously filed a petition for writ of habeas corpus, which was docketed in this Court at 3:10-CV-00091 (W.D. Pa.). On December 9, 2011, this Court issued a Report and Recommendation, followed by a January 5, 2010, Memorandum Order which dismissed the petition as moot.

Petitioner has a history of being convicted of new offenses while on parole. On a number of occasions, the Board has recommitted him as a convicted parole violator. The following is a brief history of Petitioner's criminal history.

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge. See ECF Nos. 6 and 7. *See also* 28 U.S.C. § 636(c)(1).

As set forth in the Report and Recommendation, on October 20, 2003, in the Court of Common Pleas of York County, Petitioner was sentenced to an aggregate sentence of from one to six years incarceration for various drug related offenses. His minimum release date was July 23, 2004, and his maximum date was July 23, 2008. Petitioner was released on parole December 8, 2004.

On December 22, 2007, Petitioner was charged with Driving Under the Influence following a traffic stop. On July 23, 2008, Petitioner reached the maximum sentence date on the October 20, 2003 drug-related sentences. As of that date, however, the DUI charges that resulted from the December 22, 2007 traffic stop still were outstanding.

On October 24, 2008, Petitioner again was arrested for Driving Under the Influence and for operating a vehicle without a proper license. On December 4, 2008, Petitioner pleaded guilty to the DUI charges resulting from the December 22, 2007 traffic stop. On March 27, 2009, Petitioner pleaded guilty to the DUI charges resulting from the October 24, 2008 arrest. Because this was his second DUI offense within seven years, he received an aggregate sentence of from 90 days to 5 years incarceration with a minimum sentence date of June 5, 2009 and a maximum sentence date of March 7, 2014.

On March 11, 2009, the Board served Petitioner with a notice of charges indicating that he was being charged as a convicted parole violator with respect to his 2003 sentence as the result of the December 4, 2008 guilty pleas. On May 14, 2009, Petitioner was recommitted and his 2003 sentence was recalculated to a new maximum sentence date of August 24, 2012.[2]

---

[2] The Pennsylvania Parole Act, like statutes enacted in many other states and by the federal government, does not give any sentencing credit for time spent on parole for the remainder of a parolee's sentence who has been convicted of other crimes while on parole. Thus, parolees who chose to commit additional criminal offenses during the period they would have been incarcerated but for the fact that they were released on parole, the service of their sentence

On November 3, 2009, Petitioner was granted reparole from the 2003 sentences and parole from the 2009 sentences upon successful completion of drug and alcohol treatment. Petitioner was released on parole from his 2009 sentence on July 6, 2010. His maximum sentence date was March 7, 2014.

On January 12, 2012, Petitioner pled guilty to a new criminal offense in York County, case number CP-67-CR-5665-2011. On that date, Petitioner was released to Pennsylvania authorities and placed in SCI-Chester in "parole violator pending" status. On March 20, 2012, petitioner's parole was revoked because of the 2012 conviction in York County. By Board decision recorded May 4, 2012, Petitioner was recommitted to state custody as a convicted parole violator. His new parole violation maximum sentence date on the March 27, 2009 DUI sentence was established as May 3, 2015.

Petitioner filed a petition for administrative review of the May 4, 2012 parole board decision. On September 4, 2012, the petition for administrative review was denied and the May 4, 2012 decision was affirmed. The record reflects that Petitioner did not challenge the parole board decisions of March 20, 2012, May 4, 2012, or September 4, 2012 by filing a petition for review in the Commonwealth Court of Pennsylvania. 42 Pa.C.S § 763(a).

Petitioner was refused parole on September 7, 2012. Petitioner was again refused parole on November 14, 2013. Petitioner is currently incarcerated in Pennsylvania State Correctional Institution - Smithfield, serving the March 27, 2009 DUI sentence, which will expire on May 3, 2015.

Petitioner commenced the present action on February 18, 2014, pursuant to 28 USC § 2254 by filing a petition for a writ of habeas corpus. He contends that he is being detained

---

"freezes" on the date of their release on parole and does not begin running again until they are

unlawfully as a convicted parole violator because, according to Petitioner, his parole has "maxed out." He seeks an order from this Court that invalidates the extension of his maximum sentence date and directs that he be released from state custody and transferred to York County. Respondents have filed a Response to the Petition, in which they argue, *inter alia*, that Petitioner's claims must be denied as procedurally defaulted because he failed to exhaust them in state court. Petitioner filed a Reply in Opposition. (ECF No. 8). *See* Local Rule 2254(E)(2) (a petitioner "may file a Reply . . . within 30 days of the date the respondent files its Answer.").

## Discussion

Respondents are correct that Petitioner's claims must be denied because he failed to exhaust them in state court and, as a result, has procedurally defaulted them. The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731(1991). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 842–49 (1999). The requirement is:

> principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490–491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886) ]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). *See Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the

---

returned to custody to serve the remainder of the original sentence.

State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

*Rose v. Lundy*, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844–45. The petitioner carries the burden of proving exhaustion of all available state remedies. *See, e.g., Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

To properly exhaust a federal constitutional claim regarding the Parole Board's actions, a Pennsylvania prisoner must first seek administrative review with the Board itself, pursuant to 37 Pa.Code § 73.1. The Petitioner completed this first step. However, following the Parole Board's decision to deny his administrative appeal, he was required to seek review in the Commonwealth Court, 42 Pa.C.S. § 763(a), which he did not do. If the Commonwealth Court denied him relief, he then would have had to seek review in the Pennsylvania Supreme Court before he could raise his claims in a federal habeas petition. *See Williams v. Wynder*, 232 F. App'x 177, 180 (3d Cir. 2007) (concluding that the Pennsylvania Supreme Court's Order 218 does not apply to decisions issued by the Commonwealth Court and that "the District Court correctly held that [petitioner] was required to exhaust his available state remedies by filing a petition for allowance of appeal in the Pennsylvania Supreme Court").

In sum, this Court must conclude that the Petitioner did not exhaust any of his federal habeas claims in state court. Because he did not, they are procedurally defaulted for the purposes of federal habeas review. *See, e.g., Lines v. Larkins*, 208 F.3d 153, 160-69 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at

5

730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines*, 208 F.3d at 162–69.

A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." *See, e.g., Coleman*, 501 U.S. at 750; *Martinez v. Ryan,* –––U.S. ––––, 132 S.Ct. 1309 (2012); *Murray v. Carrier*, 477 U.S. 478, 488, 494 (1986).[3] Petitioner points to no evidence that establishes cause for his default or prejudice stemming therefrom.

In conclusion, for the reasons set forth above, the petition for a writ of habeas corpus is dismissed with prejudice because Petitioner failed to exhaust his claims and, as a result procedurally defaulted them.

### Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a petition on procedural grounds without reaching the prisoner's underlying constitutional

---

[3] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schulp*, 513 U.S. at 316. This is not

claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484  2000). Applying this standard here, the Court finds that jurists of reason would not find it debatable that the instant petition should be dismissed. Accordingly, a certificate of appealability shall be denied.

## Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus will be dismissed and a certificate of appealability will be denied.

An appropriate Order follows.

## ORDER

**AND NOW**, this 7th day of August, 2014,

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is dismissed with prejudice, and a certificate of appealability is **DENIED**. The clerk of courts is directed to close this case.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
U.S. Magistrate Judge

cc: Howard B. Wright
    FP-5050
    SCI Smithfield

---

one of the rare cases in which the fundamental miscarriage of justice rule is implicated.

PO Box 999
1120 Pike St.
Huntingdon, PA 16652

Alan M. Robinson
Office of General Counsel
Pennsylvania Board of Probation and Parole